JOHN J. SWEENEY, as President of Local 32B-32J, Service Employees International Union, AFL-CIO, Respondent, v HERMAN MANAGEMENT, INC., Appellant.

First Department, February 11, 1982

**APPEARANCES OF COUNSEL**

*Robert M. Schanzer* of counsel (*David R. Rothfeld* with him on the brief; *Solomon & Rosenbaum, Drechsler & Leff,* attorneys), for appellant.

*William J. Dealy* of counsel (*Michael Geffner* with him on the brief; *Israelson, Manning & Raab,* attorneys), for respondent.

**OPINION OF THE COURT**

FEIN, J.

In March, 1976 Bernard H. Lange was appointed receiver in foreclosure proceedings of premises 1921-1935 7th Avenue, Manhattan. Respondent Herman Management (Herman) was subsequently retained by Lange as manager of the premises. Later that year Herman, on

behalf of Lange, signed a collective bargaining agreement with a service employees union, represented herein by petitioner. The agreement was a union preprinted form, designed for signature by a representative of the union on the one hand, and by an agent on behalf of the employer on the other. A representative of Herman signed on behalf of the "employer", "As agent for Bernard H. Lange as Receiver".

Paragraph 1(a) of article VII of the agreement provided in pertinent part that in the event of any "sale, lease, transfer or assignment of control, occupancy or operation of the premises * * * the Employer, be he seller, lessor, transferor, assignor or otherwise, shall, as a condition of the transfer require the transferee to agree in writing to adopt this agreement and offer employment to all employees of the Employer. Without in any way limiting the other rights and remedies of the Union, anyone failing to adhere to the foregoing provisions shall pay, in addition to such further damages as may be found by the Arbitrator, six (6) months pay for the benefit of the employees as liquidated damages to them."

At the foreclosure sale held in 1977 by the court-appointed referee, the property was bid in by Bankers Trust Company, the mortgagee, to whom the property was conveyed by referee's deed. Bankers Trust Company then sold the property to World Muslim Organization. The referee's deed contained no reference to the agreement signed by petitioner and Herman. Neither the mortgagee nor the new owner signed any further agreements with the union. However, World Muslim Organization, the new owner, signed the following agreement with Bankers Trust: "The Purchaser agrees to assume and carry out the terms of any labor contracts covering said buildings."

The new owner did hire all nine of the employees covered in the collective bargaining agreement, but fired them all three days after assuming ownership. This arbitration proceeding was then commenced against Herman, the managing agent, for violation of the agreement. In the formal notice of intention to arbitrate, the union's complaint director asserted that the new owner, which had discharged the union employees, "took title to the premises

from Milton Herman Management, the prior owner, who did not require the new owner to sign a contract and offer the members employment in accordance with Article VII of the Union contract."

The arbitrator found that Herman had entered into a valid contract with the union, assuming liability for performance thereunder; that the new owner's firing of the union members constituted noncompliance with article VII of the agreement; and that "in effect a 'clear' [a]greement was made to avoid the terms of the Agreement", thus rendering Herman liable for six months' pay for these employees, as liquidated damages.

Plainly petitioner and the arbitrator ignored the facts that there had been a foreclosure sale, a referee's deed to Bankers Trust (the mortgagee), and an arm's length conveyance by Bankers Trust to World Muslim Organization, and that Herman had no role in these conveyances and could not legally have had any voice in the terms thereof. Under these circumstances it was contrary to the facts and plainly irrational to find that Herman had entered into "a 'clear' [a]greement * * * to avoid the terms of the Agreement".

Special Term confirmed the award as rational, ruling that respondent's contention that it had signed the agreement as an agent for a disclosed principal was overcome by the fact that the agreement here imposed "contractual obligations on the 'Employer' of the building's service employees, and not the owner of the premises," and that such control of service employees by the managing agent was consistent with the custom of the industry.

The principle has long been established that an agent acting on behalf of a disclosed principal will not be personally bound, absent clear and explicit evidence of the agent's intention to substitute or add his personal liability for or to that of his principal. (*Mencher v Weiss*, 306 NY 1, 4; *Hall v Lauderdale*, 46 NY 70; *Matter of Littlejohn & Co.* [*Fah Sang Co.*], 20 AD2d 697; see *Savoy Record Co. v Cardinal Export Corp.*, 15 NY2d 1, 4, where the manner of the agent's subscription was similar to the subscription by respondent herein ["As agent on Behalf of"].) Indeed, the

burden has historically been on the party seeking to bind the agent exclusively, to overcome the presumption that the agent's act was solely on behalf of the disclosed principal (*Hall v Lauderdale, supra; RKO-Stanley Warner Theatres v Plaza Pictures,* 54 AD2d 623, 624).

Here the arbitrator and Special Term relied upon the use in the signature block of the word "Employer", which they construed in contradistinction to the "owner" of the premises. But while it may be customary in the industry for a managing agent to exercise immediate supervisory control over the hiring and firing of service employees, such custom could not add to the power of the court-appointed receiver in foreclosure or the court-appointed referee who conveyed the premises by referee's deed pursuant to the terms of the referee's foreclosure sale. It is not shown how Herman could in any lawful way affect or condition the terms of such conveyance. Moreover, it was the new owner of the premises, not respondent, which independently and summarily fired the employees in the face of its commitment to retain them. The court cannot close its eyes to an attempt to hold an agent, such as Herman, liable under these circumstances.

Nothing in the agreement between petitioner and Herman could impose such a duty on Herman. Paragraph 1 (a) of article VII refers to the "Employer" in terms of the party exercising authority to sell, lease, transfer or assign control, occupancy or operation of the premises. Paragraph 1 (c) specifically placed the responsibility for guaranteeing continuity of the collective bargaining agreement on the transferor "of the building". Clearly, Herman could never have been considered a "seller, lessor, transferor, assignor or otherwise"* of these premises under the circumstances of the receivership and the foreclosure sale.

It is plain from the face of the contract and its signature page that petitioner knew it was contracting with Herman as agent of a disclosed principal, Bernard H. Lange as receiver, not as owner. It is thus clear that the parties

---

* That the general term "otherwise" does not expand upon the meaning of its more specific predecessors beyond the concept of ownership control of the premises must be accepted here as the only reasonable interpretation, without violating the rule of *ejusdem generis* (see *Traylor v Crucible Steel Co.,* 192 App Div 445; *Osborn v Wilson & Co.,* 118 Misc 379, affd 206 App Div 787).

negotiating here were the union and the agent of a court-appointed receiver, with limited powers, awaiting a foreclosure sale, terminable upon such sale.

The power of the court to vacate an arbitrator's award is limited (CPLR 7511). The statutory grounds are exclusive (*Matter of Cashman* [*New Hampshire Merchants Ins. Co.*], 42 AD2d 732). However, the power exists where the arbitrator rendered an irrational decision (*Rochester City School Dist. v Rochester Teachers Assn.*, 41 NY2d 578). Even an error of law or fact is not ground to disturb an award. Unless the award is completely irrational the arbitrator is free to fashion an award without judicial interference (*Lentine v Fundaro*, 29 NY2d 382; *Matter of Temporary Comm. of Investigation of State of N. Y. v French*, 68 AD2d 681). However, the arbitrator exceeds his power when he gives a completely irrational construction to an agreement, thereby effectively creating a new contract between the parties (*Matter of National Cash Register Co.* [*Wilson*], 8 NY2d 377).

Here the arbitrator's decision was irrational in several respects, and as such should have been vacated by Special Term. First, the arbitrator overlooked the fact that Herman entered into the contract with petitioner as agent for a receiver, ignoring Herman's limited agency status and lack of power to transfer any control over the premises. In coming to his conclusion the arbitrator had to disregard the fact that Herman never had any power to enforce this agreement. Moreover he gave no weight to the fact that the new owner unilaterally fired the employees after giving written assurance that it would adhere to existing union contracts. The arbitrator also disregarded petitioner's misstatement of fact in the notice of intention to arbitrate, which named respondent as the "prior owner" of the premises. And finally, the arbitrator found that respondent had somehow entered into "a 'clear' [a]greement" to avoid the terms of the collective bargaining agreement. Such an agreement of avoidance — we are not even told with whom respondent reached it — was necessarily created by the arbitrator out of whole cloth, for there is absolutely no evidence in the record to support such a conclusion. Palpably, as a matter of fact and law, Herman could not enter

into any such contract or agreement, since the new owner was a purchaser from one whose title came from a referee's deed. The arbitrator took a contract with arguable terms and, by ignoring and misinterpreting some facts and adding new ones, created nonexistent legal duties and an entirely new contract with different obligations. The award was completely irrational.

The order and judgment, Supreme Court, New York County (FRAIMAN, J.), entered February 11, 1981, confirming an arbitration award in petitioner-respondent's favor, denying respondent-appellant's cross petition to vacate the award, and granting judgment to petitioner-respondent in the amount of $62,195.12 plus interest, should be reversed, on the law, the petition to confirm should be denied and the cross petition to vacate should be granted, without costs.

KUPFERMAN, J. P., SANDLER, ROSS and CARRO, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on February 11, 1981, unanimously reversed, on the law, the petition to confirm denied and the cross petition to vacate granted, without costs and without disbursements.