SCHERBENSKE EXCAVATING, INC., Petitioner and Appellee,

v

NORTH DAKOTA STATE HIGHWAY DEPARTMENT, Respondent and Appellant.

Civ. No. 10818.

Supreme Court of North Dakota.

March 20, 1985.

As Corrected April 9, 1985.

Zuger & Bucklin, Bismarck, and Moore, Costello & Hart, St. Paul, Minn., for petitioner and appellee; argued by Lyle W. Kirmis, Bismarck.

Robert E. Lane, Asst. Atty. Gen., Bismarck, for respondent and appellant.

LEVINE, Justice.

This is an appeal by the State Highway Department from a district court judgment affirming an arbitration award of $781,604.00 in favor of Scherbenske Excavating, Inc. (Scherbenske) and denying the Highway Department's motion to vacate the award.

In the summer of 1980 Scherbenske contracted with the Highway Department to pave 21.5 miles of roadway near Beulah. The contract provided that Scherbenske would commence work by mid-August 1980 and complete the project by the fall of 1980. It was further agreed that Scherbenske would work on a mile-by-mile basis as the subcontractors completed their preparatory work on the road. Subsequently the State Highway Department decided that Scherbenske could not begin work until all subcontractors had completed preparation of the entire stretch of 21.5 miles. As a result, Scherbenske was delayed in beginning its work for approximately two months until mid-October 1980, and was unable to complete the job until September 1981. Factors contributing to the delay in completion were inclement weather in the summer of 1981, inferior preparation by the subcontractors, and a greater than anticipated increase of traffic.

Because of these delays the State imposed liquidated damages of $11,600.00. However, the State later conceded responsibility for Scherbenske's delay in commencement and agreed that the assessment of liquidated damages was not warranted.

Scherbenske made a claim against the Highway Department for the increased cost due to the delay and subsequently demanded arbitration pursuant to North Dakota Century Code § 24–02–26. A hearing was held before three arbitrators. They awarded Scherbenske $781,604.00 [1] and Scherbenske subsequently moved the district court to affirm the award while the State moved to vacate it. Following a

---

**1.** Although the amount of the award was unanimously determined, one arbitrator objected to the use of the total cost method to arrive at that amount.

hearing the court denied the State's motion to vacate and granted Scherbenske's motion to affirm the award. Judgment was entered and the State filed this appeal.

The Highway Department's initial contention is that the "completely irrational" standard of review of arbitration awards announced in *Nelson Paving Co., Inc. v. Hjelle,* 207 N.W.2d 225 (N.D.1973), should be abandoned in favor of a more liberal scope of review.

In *Nelson Paving,* decided a little over a decade ago, the North Dakota State Highway Department argued, as it does in the instant case, for vacation of the arbitration award under NDCC § 32–29–08(4)[2] because the arbitrators "exceeded their powers" in making their award. This Court, after surveying case law of other jurisdictions, adopted the New York rule and concluded that an arbitration award would not be vacated pursuant to § 32–29–08(4) unless the award were completely irrational. *Nelson Paving, supra* at 234.

In *Nelson Paving* the court set out the perimeter of complete irrationality from which it reasoned that an award not devoid of rationality would be affirmed:

"The mistakes that will void an award are those appearing on its face or gross mistakes of the arbitrators extraneously appearing as to their powers or duties, which result in real injustice or constructive fraud." *Nelson Paving, supra* at 230.

This court has not had occasion since *Nelson Paving* to apply or discuss the completely irrational standard of review. Other courts have done so and their analyses are helpful in filling in the interstices of an abstract principle with particular instances.

In *O–S Corporation v. Samuel A. Kroll, Inc.,* 29 Md.App. 406, 348 A.2d 870, 872 (1975), an arbitration award was vacated as completely irrational because the contract provided no rationale for the award without resort to a wholly spurious, illogical interpretation of essential contractual language.

The Maryland Court of Appeals offered a rather poetic if not elucidating definition of a "completely irrational" award as one which is "inferentially opprobrious, *i.e.,* '[e]xpressing or carrying a sense of disgrace or contemptuous scorn' causing it to be suspect in its conception." *O–S Corporation, supra* 348 A.2d at 872. However, some light was shed by its explanation that there need be only some evidence to meet the test of rationality, *i.e.,* it may be so little as to make the result "arbitrary," so long as it is not completely irrational. *O–S Corporation, supra* 348 A.2d at 874.

Representative of another line of cases holding that an arbitration award is not completely irrational so long as the arbitrators considered the "proper sources" in fashioning the award is the Rhode Island Supreme Court's prescription:

"As long as the award 'draws its essence' from the contract, and is based upon a 'passably plausible' interpretation of the contract, it is within the arbitrator's authority and our review must end." *Rhode Island Council 94 v. State,* 456 A.2d 771, 773 (R.I.1983).

In *Rhode Island Council 94,* the contention was that an arbitration award was completely irrational in retroactively suspending two employees because there was no contract provision for retroactive suspension. The court affirmed the award on the basis of the arbitrator's inherent power to fashion an appropriate remedy, noting that the employment contract did not specifically prohibit retroactive suspension and thus the award "drew its essence" from the contract. *Rhode Island Council 94, supra* at 774–775.

Yet another explanation of the completely irrational standard of review is that an arbitrator exceeds his powers when he

---

**2.** Section 32–29–08(4) "Motion to vacate award of arbitrators—Grounds: Any party to such submission may move the court designated therein to vacate the award upon any of the following grounds: ... 4. That the arbitrators exceeded their powers, or that they so imperfectly executed them, that a mutual, final, and definite award on the subject matter submitted was not made.

gives a completely irrational construction to the agreement in dispute, thereby effectively creating a new contract between the parties. *Sweeney v. Herman Management, Inc.,* 85 A.D.2d 34, 447 N.Y.S.2d 164, 168 (1982). In the *Sweeney* case the court concluded the arbitrator took a contract with arguable terms, and, by ignoring and misrepresenting some facts and adding new ones, created nonexistent legal duties and an entirely new contract with different obligations, rendering the resulting award completely irrational. *Sweeney, supra* at 168.

■ As the foregoing discussion illustrates the definitive constituents of a completely irrational award cannot be formulated in the abstract but, like all legal principles, can best be developed on a case-by-case basis. The Highway Department urges revision of the present scope of review to require vacation of an arbitration award under NDCC § 32–29–08(4) if it is not "supported by evidence or other basis of reason," a standard adopted by the New York Court of Appeals in *Mount St. Mary's Hospital of Niagara Falls v. Catherwood,* 26 N.Y.2d 493, 311 N.Y.S.2d 863, 260 N.E.2d 508 (1970).

In *Catherwood* four members of the seven-member New York Court of Appeals drew a distinction between voluntary and compulsory arbitration holding that due process, in the context of compulsory arbitration, requires a more extensive judicial scope of review than that encompassed in the completely irrational standard. The *Catherwood* court reasoned that while parties engaged in voluntary arbitration consent to restrictions upon or deprivations of their rights to due process, similar restrictions or deprivations, if compelled by government through compulsory arbitration, must accord with procedural and substantive due process. *Catherwood, supra* 311 N.Y.S.2d at 867, 260 N.E.2d at 511. In complying with due process a broader scope of review of compulsory arbitration than completely irrational was required.

*Catherwood* is clearly distinguishable. It addressed the compulsory arbitration of disputes involving private parties. In the instant case, as in *Nelson Paving,* NDCC § 24–02–26 requires arbitration of all controversies arising out of any contract for the construction or repair of highways entered into by the Highway Department. This distinction is significant, as recognized in *Hjelle v. Sornsin Construction Company,* 173 N.W.2d 431 (N.D.1969), because here disputing private parties are not compelled to arbitrate so as to substantially interfere with their protected property rights. See *Catherwood, supra* 311 N.Y. S.2d at 869, 260 N.E.2d at 513. Rather, by virtue of NDCC § 24–02–26 the Legislature has consented on behalf on the Highway Department to arbitrate its disputes over highway construction and repair contracts it has with private contractors. See *Hjelle v. Sornsin Construction Company, supra* at 436.[3]

The policy reasons for compulsory arbitration provided by NDCC § 24–02–26 were thoroughly examined in *Nelson Paving.* Arbitration is favored as a speedy and inexpensive mode of adjusting differences,[4] and in the highly technical field of highway

---

3. Furthermore, it is not settled that arbitration required by NDCC § 24–02–26 is in fact compulsory. All controversies concerning the construction or repair of highways must be submitted to arbitration pursuant to NDCC § 24–02–26. Private contractors, by voluntarily contracting with the Highway Department, consent to arbitration, as the Legislature has done for the Highway Department in enacting NDCC § 24–02–06. Consequently, the arbitration involved in this case cannot necessarily be termed compulsory. It is at the very least a mixture of public and private, voluntary and compulsory features.

4. There is a strong federal policy favoring arbitration. *Southland Corporation v. Keating,* 465 U.S. ——, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey,* 726 F.2d 1286 (8 Cir.1984); *Douglas Aircraft Co. v. N.L.R.B.,* 609 F.2d 352 (9 Cir.1979); *Aerojet-General Corp. v. American Arbitration Ass'n,* 478 F.2d 248 (9 Cir.1973); 9 U.S.C. § 1, et seq. (1947). Arbitration as a viable means of alternative dispute resolution has been endorsed by the twenty-six states which have adopted the Uniform Arbitration Act, ten states doing so since our decision in *Nelson Paving.* See Uniform Arbitration Act (U.L.A.1984).

construction the view of the technicians named to the arbitration board is to be preferred over the view of judges who have no specific training in the field. *Nelson Paving, supra* at 230 and 237. That was true in 1973 and remains so today.[5] Indeed, the ongoing debate over alternative methods of resolving disputes in other categories of litigation underscores the continuing need for and efficacy of arbitration.

Obviously, the effect of applying the clearly irrational standard of review is to give to the arbitrators every benefit of every doubt. It affords them the widest latitude to exercise their authority and arrive at their decision without the customary restraints of traditional judicial review. It is but a reflection of the strong public policy favoring the arbitration process. We find no reasons compelling or persuasive enough to warrant revising the completely irrational standard of review and therefore we decline to overrule or modify *Nelson Paving.*

■ The second issue on appeal is whether the arbitrators' use of the "total cost" method for computing Scherbenske's damages was completely irrational so as to require vacation of their award.

Under the total cost method of computing damages due to delay, the actual costs incurred by the contractor in completing a project are subtracted from those costs the contractor originally estimated it would incur in completing the project. The resulting difference constitutes the damages suffered by the contractor.

The total cost theory is used primarily in cases when a governmental entity breaches its contract with a contractor by unjustifiably delaying the contractor from completing his work on schedule. See, *e.g.,* *Boyajian v. United States,* 423 F.2d 1231 (Ct.Cl. 1970). It is resorted to when a breach has been established but the contractor's damages cannot be ascertained with certainty. Thus the total cost theory is premised on the principle that where a contractor is

entitled to damages, the governmental body should not be exonerated merely because the contractor cannot prove his increased costs with precision. *John F. Harkins Co., Inc. v. School District of Philadelphia,* 313 Pa.Super. 425, 460 A.2d 260 (1983), and *Moorhead Construction Co., Inc. v. City of Grand Forks,* 508 F.2d 1008 (8 Cir.1975).

Application of the total cost approach presupposes the presence of four factors:

"(1) the nature of the particular losses make it impossible or highly impracticable to determine them with a reasonable degree of accuracy; (2) the plaintiff's bid or estimate was realistic; (3) its actual costs were reasonable; and (4) it was not responsible for the added expenses." *Moorhead Const. Co., supra* at 1016.

All four requirements were satisfied in this case justifying the use of the total cost method of computing damages.

As to the first requirement, Scherbenske's increased costs were primarily caused by inclement weather, heavier than anticipated traffic, and inferior preparation by subcontractors. The daily difficulties encountered by Scherbenske because of these conditions resulted in additional costs which were not subject to precise measurement and would have been difficult, if not impossible, to calculate by any method other than the total cost approach. See *J.D. Hedin Construction Co., Inc. v. United States,* 347 F.2d 235 (Ct.Cl.1965); *State Highway Com'n v. Brasel & Sims Const.,* 688 P.2d 871 (Wyo.1984).

That Scherbenske's bid was realistic, the second requisite element, is supported by the evidence and also by the fact that the Highway Department awarded Scherbenske a contract only after acceptance of its bid.

As to the third and fourth requirements, the evidence, although conflicting, supports the finding that Scherbenske's costs were

---

5. That arbitration continues to be viewed as an acceptable mode of dispute resolution is evidenced by the removal of the constitutional proscription against specifically enforcing arbitration awards. Art. IV, § 120, N.D. Const. (1889) (repealed 1976).

reasonable and that it was not responsible for the additional expenses.

We conclude that there is a sufficient factual and legal basis for the award to withstand the scrutiny of a more liberal standard of review than the one we actually rely upon. We hold therefore that the award is not devoid of rationality and that the arbitrators did not exceed their powers.

The final issue raised by the Highway Department is whether the arbitrator appointed by Scherbenske, Glen Olson, demonstrated "evident partiality," to warrant vacating the award under NDCC § 32–29–08(2).[6] The Highway Department claims the manner, timing, content, and style of Olson's questions clearly indicate his bias for Scherbenske.

The Highway Department argues Olson abandoned his proper role of disinterested and impartial arbitrator and assumed the role of Scherbenske's advocate by conducting extensive "cross-examinations" of the Highway Department's witnesses.

Initially we note the Highway Department failed to object or otherwise complain about Olson's alleged bias until after it was informed of the award for Scherbenske. Although generally the rules of evidence are not strictly applied in arbitration proceedings, see *Bd. of Education of Norwood-Norfolk Cent. v. Hess*, 49 N.Y.2d 145, 424 N.Y.S.2d 389, 400 N.E.2d 329 (1979), and the parties agreed the hearing would be conducted on an informal basis, this court has previously held that irregularities in arbitration proceedings may be waived by a failure to object. *Hackney v. Adam*, 20 N.D. 130, 127 N.W. 519 (N.D.1910). It is further well recognized, primarily in situations where an arbitrator's bias is known prior to the hearing, that the failure to object constitutes a waiver of that issue. See *Garfield & Co. v. Wiest*, 432 F.2d 849 (2d Cir.1970), *cert. denied*, 401 U.S. 940, 91 S.Ct. 939, 28 L.Ed.2d 220 (1971). This rule is premised on the theory that a party to arbitration should not be allowed to obtain a second hearing by silently collecting its objections for the contingency of a loss in the first one. See *Alaska State Housing v. Riley Pleas, Inc.*, 586 P.2d 1244 (Alaska 1978).

■ However, in this instance Olson's alleged bias was not known prior to the hearing but only became apparent, at least to the Highway Department, by the manner and content of Olson's questioning. Consequently this situation is distinguishable from the cases cited above insofar as the grounds for objecting were not as readily apparent. We therefore conclude the Highway Department's neglect to object did not constitute a waiver.

■ Nonetheless, we believe the Highway Department has failed to establish Olson's bias for Scherbenske. Although the Highway Department claims Olson's difficult questioning demonstrated his partiality, the arbitrators were expressly invited to question witnesses in a "wide open manner." Additionally, Olson was an expert in the field of highway construction and his inquiries should be expected to be demanding and probing. See, *e.g.*, *Cities Service Oil Co. v. American Mineral Spirits Co.*, 22 F.Supp. 373 (S.D.N.Y.1937). Furthermore, the Highway Department conceded Olson's alleged bias did not keep out any evidence the Highway Department sought to introduce. The partiality or bias which will overturn an arbitration award must be certain and direct, and not, as it is here, remote, uncertain or speculative. *North American Steel Corp. v. Siderius, Inc.*, 75 Mich.App. 391, 254 N.W.2d 899 (1977).

For the foregoing reasons we affirm both the order denying the motion to vacate and the judgment.

ERICKSTAD, C.J., and MESCHKE, GIERKE and VANDE WALLE, JJ., concur.

---

6. NDCC § 32—29–08(2): "2. That there was evident partiality or corruption in the arbitra- tors, or either of them."