**BYRON'S CONSTRUCTION COMPANY,**
Claimant and Appellant,

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION,** Respondent and Appellee.

**Civ. No. 900207.**

Supreme Court of North Dakota.

Nov. 29, 1990.

Richard L. Burns (argued), Glendive, Mont., for claimant and appellant.

Murray G. Sagsveen (argued), Sp. Asst. Atty. Gen., Bismarck, for respondent and appellee.

LEVINE, Justice.

Byron's Construction Co. (Byron's) appeals from a district court judgment dismissing its claims against the North Dakota Department of Transportation (the De-

partment) in its October 6, 1988, demand for arbitration. We affirm.

Byron's and the Department entered into a highway construction contract in 1985. On February 11, 1988, Byron's submitted a five-claim demand for arbitration requesting additional compensation. Claims 1 through 4 dealt with delay, disruption, additional work, soil types, borrow quantities, and tolerance requirements for gravel spread on the roadbed. Claim 5 dealt with the Department's imposition of sanctions for violation of a contract provision relating to participation by minority business enterprises.

After a hearing on April 25–26, 1988, the arbitrators dismissed all five claims. The arbitrators determined that for Claims 1 through 4, Byron's failed to provide timely notice under § 24-02-26.1, N.D.C.C., of its intention to claim additional compensation. The arbitrators dismissed Claim 5 for lack of jurisdiction. The district court affirmed the arbitrators' dismissal of all of Byron's claims. On appeal, we concluded that the arbitrators erred in dismissing Claim 5 for lack of jurisdiction and affirmed the dismissal of Claims 1 through 4 except for a subissue under Claim 2 relating to "force account" work which was not subject to the notice requirement of § 24-02-26.1, N.D. C.C. *Byron's Constr. Co. v. North Dakota State Highway Dep't*, 448 N.W.2d 630 (N.D.1989).

On October 6, 1988, Byron's again demanded arbitration, seeking compensation for claims relating to "Borrow Quantities" and "Gravel Laydown Due to Altered Specification." An arbitration hearing was held on May 31, 1989. That hearing was limited to "deciding the issue of whether or not the claim presented in this matter is the same claim that previously was adjudicated in the earlier arbitration proceeding." In its decision of June 14, 1989, the second arbitration panel determined:

"2.

"The final estimate for final quantities of materials involved in this construction project were received by the claimant's attorney on or before April 4, 1988, ... and therefore these quantities were available to the claimant for submission in the first arbitration proceedings involving this project.

"3.

"The alleged claim of an altered specification by the claimant was based upon the testimony of Paul Regan at the first arbitration proceedings. Review of that testimony and the evidence presented at the hearing on May 31, 1989, shows conclusively that this issue was considered in the first arbitration proceedings.

"4.

"The claimant had the opportunity prior to the first arbitration proceedings to request a continuance for the purpose of further study and review of the final estimates of quantities involved in this project and the claimant chose not to ask for such continuance and instead chose to proceed with the scheduled arbitration hearing on April 26, 1988.

"5.

"The claimant at or prior to the previous arbitration proceedings could have amended their claim to include additional matters brought to their attention shortly before or at the first arbitration hearing and there was no evidence to show that any such amendment was requested by the claimant."

The arbitrators concluded that "[a]ll of the issues presented by the claimant in the second demand for arbitration were previously litigated and determined in the first arbitration proceedings" and ordered that "the second arbitration demand and claim is in all things dismissed."

The Department filed a motion in district court for entry of a judgment implementing the decision of the arbitrators. Byron's filed a motion for an order vacating the arbitrators' decision and ordering a rehearing. The district court denied Byron's motion and granted the Department's motion. A judgment dismissing Byron's claims in its October 6, 1988, demand for arbitration

was entered and Byron's appealed, raising one issue:

"Was the arbitrator's determination that the doctrine of 'res judicata' precluded appellant's right to arbitrate completely irrational?"

■■■ An arbitration decision will be vacated only if it is completely irrational. *Byron's Constr. Co. v. North Dakota State Highway Dep't, supra; Scherbenske Excavating, Inc. v. North Dakota State Highway Dep't.*, 365 N.W.2d 485 (N.D. 1985). Although there is no precise definition of a clearly irrational decision, *Scherbenske Excavating, Inc. v. North Dakota State Highway Dep't, supra*, generally, a decision is completely irrational if it is either mistaken on its face or so mistaken as to result in real injustice or constructive fraud. *Nelson Paving Co., Inc. v. Hjelle*, 207 N.W.2d 225 (N.D.1973). The doctrine of res judicata applies to arbitration proceedings as well as judicial proceedings. *Wellons, Inc. v. T.E. Ibberson Co.*, 869 F.2d 1166, 1168 (8th Cir.1989); *B.O.W. Cleaning Corp. v. Doe*, 84 A.D.2d 527, 443 N.Y.S.2d 614 (App.Div.1981); *Restatement (2d) of Judgments* § 84 (1982); 6 C.J.S. *Arbitration* § 128 (1975). The doctrine of res judicata may be used "to protect successful parties from unnecessary, duplicative proceedings which cause drains on the resources of both the parties and the judiciary." *Berdahl v. North Dakota State Personnel Board*, 447 N.W.2d 300, 307 (N.D.1989).

■ Byron's argues that the doctrine of res judicata does not bar its claims because its claims in the first arbitration proceeding were not decided on the merits:

"Res judicata is '... a thing or matter that has been definitely or finally settled and determined *on its merits* by a court of competent jurisdiction.' (emphasis added) *Robertson Lumber Company v. Progressive Contractors, Inc.*, 160 NW2d 61, 76 (N.D.1968). Nothing in the first arbitration hearing was determined *on its merits* since the entire demand was dismissed summarily on 'notice' and 'jurisdictional' issues."

The reach of res judicata is not necessarily limited to matters that have actually been decided "on the merits." *See, e.g.*, Comment *a* to *Restatement (2d) of Judgments* § 19:

"*a. Rationale.* It is frequently said that a valid and final personal judgment for the defendant will bar another action on the same claim only if the judgment is rendered 'on the merits.' The prototype case continues to be one in which the merits of the claim are in fact adjudicated against the plaintiff after trial of the substantive issues. Increasingly, however, by statute, rule, or court decision, judgments not passing directly on the substance of the claim have come to operate as a bar....

"The rule that a defendant's judgment acts as a bar to a second action on the same claim is based largely on the ground that fairness to the defendant, and sound judicial administration, require that at some point litigation over the particular controversy come to an end. These considerations may impose such a requirement even though the substantive issues have not been tried, especially if the plaintiff has failed to avail himself of opportunities to pursue his remedies in the first proceeding, or has deliberately flouted orders of the court."

Comment *a* to *Restatement (2d) of Judgments* § 24 states: "The law of res judicata now reflects the expectation that parties who are given the capacity to present their 'entire controversies' shall in fact do so."

■ This court has applied res judicata to cases in which substantive issues have not been directly decided. In *Peacock v. Sundre Township*, 372 N.W.2d 877, 878 (N.D.1985), we defined res judicata as meaning:

"that *a valid, existing final judgment* from a court of competent jurisdiction *is conclusive, with regard to the issues raised, or those that could have been raised*, and determined therein, as to the parties and their privies in all other actions." (Emphasis added.)

As we observed in *Wolf v. Anderson*, 422 N.W.2d 400, 401 (N.D.1988) [quoting *Per-*

*due v. Knudson,* 179 N.W.2d 416, 421 (N.D.1970) ]:

> "Courts will not permit a litigant to try a part of his case and then, if he is disappointed with the outcome of the action, to have another day in court simply by alleging new claims or making a new demand for relief, when he could have made such demand in the prior action."

We conclude that disposition of Byron's claims in the first arbitration proceeding on notice and jurisdictional grounds rather than through resolution of the substantive issues "on the merits" does not preclude application of the doctrine of res judicata to bar Byron's claims in the second arbitration proceeding.

■ One of the claims involved in both arbitration proceedings related to a dispute over borrow quantities. The arbitrators in the second arbitration determined that the claim had been previously determined in the first arbitration proceeding. Byron's argues that "the issue of the final quantities could not have been incorporated into the first arbitration hearing Submission To Arbitration, since they were not even issued at the time Submission was entered." However, Byron's received "final quantities" estimates from the Department in a letter dated April 4, 1988, prior to the first arbitration hearing, but chose not to dispute the quantities figures. Byron's submitted its claim in the first arbitration proceeding on a "total cost theory."[1] On redirect examination by Byron's attorney, Louis Byron testified:

> "Q. Was there an adequate amount of time to really evaluate that to see just exactly how far off the quantities were?
>
> "A. No. We were unconcerned about it at that time for the simple reason we had submitted everything under a total cost basis."

On recross-examination by the Department's attorney, Louis Byron testified:

> "Q. Because you were making your first arbitration on the total cost theory, it didn't really matter what the quanti-

ty—what the difference in quantity was, did it?

> "A. That's right."

Thus, it is clear that the issue of borrow quantities is one that could have been raised at the first arbitration hearing. Byron's chose not to raise the issue because Byron's was "unconcerned about it," having "submitted everything under a total cost basis." Byron's was, therefore, barred from raising the issue in the second arbitration proceeding by the doctrine of res judicata enunciated in *Peacock v. Sundre Township, supra.* The arbitrators' decision in this case was not completely irrational.

■ The other claim involved in both arbitration proceedings related to a dispute about tolerance requirements for gravel spread on a section of roadbed. Byron's had to re-blade the gravel it laid on a section of roadbed and sought compensation for the extra work. In the first arbitration proceeding, one of the items in Claim 4 was: "The State required a tolerance on gravel base that was unreasonable and not required." At the first arbitration hearing, one of the witnesses testified that the Department had altered a specification. Because of that testimony, Byron's demanded the second arbitration hearing and submitted a claim for: "Gravel Laydown Due to Altered Specification." Joe Metzger, a civil engineer appearing on behalf of Byron's, testified on cross-examination:

> "Q. Was the problem that the State was enforcing a requirement that you thought wasn't required by the specification?
>
> "A. Yes; but we really didn't known what they were enforcing, ..."
>
> *  *  *  *  *  *
>
> "Q. The bottom line is that there was a dispute over blading the gravel and accepting the gravel; right?
>
> "A. Yes.
>
> "Q. And the bottom line is that in the first arbitration proceeding the contractor, Byron's Construction, went to the

1. Louis Byron testified: "It's necessary to use a total cost theory when you can't obtain all your information and get all your quantities that you feel that you're entitled to."

arbitrators and said, we're having a terrible time with this gravel laydown, we've incurred some extra costs and we want to be compensated for those costs?

"A. That gravel was in part of the total cost. It was not specifically spelled out as a cost, no.

"Q. But it was a part of the total cost?

"A. It was included, but it was not spelled out as such."

Francis Ziegler, a Department construction engineer, testified:

"Q. The total cost that Byron's Construction was asking in the first arbitration proceeding, would that have included all costs that were related to this so-called unreasonable tolerance?

"A. Yes, it would."

Ziegler also testified that "[t]here's no difference" between the claim for "gravel laydown due to altered specification" in the second arbitration and Byron's claim for additional compensation because the Department "required a tolerance on the gravel base that was unreasonable and not required," which was denied by the arbitrators in the first arbitration proceeding. Roger Kluck, a Department claims engineer, testified that "the gravel laydown issues presented to the first arbitration panel [were] the same as the gravel laydown issues presented to this arbitration panel."

In light of the foregoing testimony, the arbitrators' conclusion that this issue was "previously litigated and determined in the first arbitration proceedings in connection herewith" and their consequent dismissal of the second arbitration demand and claim are not completely irrational.

The record does not show that at the first arbitration hearing Byron's sought additional time or a further hearing to more fully address the matters of borrow quantities or the tolerance requirement for gravel laydown (altered specification). "If either party requests, the arbitrator may provide additional time or schedule an additional hearing to allow for additional testimony or evidence." T. Oehmke, *Construction Arbitration,* § 8:7 (1988). Grounds for ad-

journment or continuance requests include unanticipated amendments of claims or answers and material changes in issues. T. Oehmke, *supra,* at § 8:11. "[A] party to arbitration should not be allowed to obtain a second hearing by silently collecting its objections for the contingency of a loss in the first one." *Scherbenske Excavating, Inc. v. North Dakota State Highway Dep't, supra,* 365 N.W.2d at 490.

Affirmed.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

MESCHKE, Justice, concurring.

While I join in Justice Levine's opinion, I caution that this opinion should not be read too broadly. While the res judicata effect of the initial arbitration is not irrational in this case, application of res judicata in other arbitrations may go beyond the scope of the submission to arbitration.

Not every second arbitration will duplicate a first one, even for highway construction contracts. *See* NDCC 24-02-26.1, 24-02-27, 24-02-28, 24-02-29, 24-02-30 and 24-02-31. Particularly, *see* NDCC 24-02-32. It seems to me that, under many circumstances, these statutes contemplate more than one arbitration on a single highway construction contract.

This statutory plan for arbitrating disputes in highway construction contracts does not clearly preclude "splitting a cause of action," as in civil actions. *Cf.* 46 Am. Jur.2d *Judgments* § 405 (1969). Arbitration parties should be concluded only as to those matters that were submitted to arbitration, that have been heard, and that were the subject of an arbitration award. 5 Am.Jur.2d *Arbitration and Award* § 147 (1962). In this case, I am satisfied that it was not irrational to rule that the second arbitration claim included matters submitted and determined in the first arbitration proceeding.