1998 ND APP 5

Damon McKIBBEN, Charlotte McKibben, Galen McKibben and Marilyn McKibben, Plaintiffs and Appellants,

v.

Donald A. GRIGG and Betty M. Grigg, and Grigg Apiaries, Inc., Defendants and Appellees.

Civil No. 980051CA.

Court of Appeals of North Dakota.

Aug. 14, 1998.

T.L. Secrest (argued), of Secrest Law Firm, Hettinger, for plaintiffs and appellants.

Steven J. Wild (argued), of Sadowsky & Wild Law Office, Bowman, for defendants and appellees.

GLASER, Surrogate Judge.

[¶ 1] Damon, Charlotte, Galen and Marilyn McKibben appeal from a judgment confirming, over their objection, a $6,510 award against Donald and Betty Grigg, and Grigg Apiaries, Inc., made by a majority of a three-member board of arbitrators. The arbitration was not mandated by statute or rule, but was voluntary because the McKibbens and the Griggs, as part of their 1979 partnership contract, had agreed to submit any controversy arising thereunder to arbitration. Because there is no basis to vacate or modify the arbitration award, we affirm the judgment.

[¶ 2] In May 1979 the parties formed the West River Honey Company Partnership.

The partnership agreement contained the following arbitration provision:

"Any dispute arising under the terms of this agreement that cannot be resolved by a meeting of the partners shall be submitted to arbitration. 100% of the members of the partners shall select two arbitrators. These two arbitrators shall select a third party to serve with them on all matters submitted for arbitration.

"The decisions of the majority of arbitrators shall be binding."

[¶ 3] A dispute ultimately arose over the meaning of the terms of a buy-out provision in the partnership agreement. The McKibbens filed an application to arbitrate under the Uniform Arbitration Act, N.D.C.C. Chapter 32–29.2. The district court found "there is a written agreement as described in" N.D.C.C. § 32–29.2–01, ordered the McKibbens to select an arbitrator, the Griggs to select an arbitrator, the two arbitrators to select a third arbitrator, and sent the case for arbitration.

[¶ 4] Two of the three arbitrators favored awarding the McKibbens $6,510, and the Griggs moved to confirm the arbitrators' award. The McKibbens responded with a motion to vacate or modify the arbitrators' award. The district court confirmed the award and denied the McKibbens' motion to vacate or modify. The McKibbens appealed.

[¶ 5] At common law voluntary arbitration meant, in essence, that the decision of an arbitrator was final and not appealable. *See* 4 Am.Jur.2d *Alternative Dispute Resolution* §§ 9, 10, 11 and 166 (1995). Many states, including North Dakota, have enacted statutes which ameliorate, in a limited way, the rigidity of the common law concept. Current North Dakota statutes found in the Uniform Arbitration Act, N.D.C.C. Chapter 32–29.2, do not authorize appeals from decisions of arbitrators. No formal record is necessary, findings of fact and conclusions of law are not required, and arbitrators need not state a reason for their decision. *See* 4 Am.Jur.2d *Alternative Dispute Resolution* § 11 (1995). As the California Court of Appeal observed in *Tate v. Saratoga Sav. and Loan Ass'n*, 216 Cal.App.3d 843, 265 Cal.

Rptr. 440, 450 (1989) (quoting *Sapp v. Barenfeld*, 34 Cal.2d 515, 212 P.2d 233, 239 (1949)):

"'"There is no general rule that arbitrators must find facts and give reasons for their awards. In fact, the rule and general practice is to the contrary." [Citations.] ... The award is valid if it serves to settle the entire controversy. A decision simply that one of the parties should pay the other a sum of money is sufficiently determinative of all items embraced in the submission.'"

[¶ 6] When the parties have agreed to submit all contractual disputes to arbitration, the role of a court is very limited. *See State v. Stremick Const. Co.*, 370 N.W.2d 730, 734 (N.D.1985). The fact that courts will not or cannot grant the relief granted by an arbitrator is not grounds for vacating or refusing to confirm the award. *See* N.D.C.C. § 32–29.2–12(1). *See also* 4 Am.Jur.2d *Alternative Dispute Resolution* § 166 (1995). There is a form of review, but it is very limited because the court is required to affirm the award unless it is vacated for such extraordinary events as corruption, fraud or other undue means. *See* N.D.C.C. §§ 32–29.2–11 and 32–29.2–12. The court can only modify an award if there was an evident miscalculation of figures or mistake in description, if the arbitrators awarded on a matter not submitted to them, or if the award is imperfect in a matter of form. *See* N.D.C.C. § 32–29.2–13.

[¶ 7] In proceeding with the arbitration in this case, the parties and the district court invoked various provisions of N.D.C.C. Chapter 32–29.2, in raising and addressing procedural disputes, including the parameters of judicial review. Although the McKibbens pointed out to the district court that the parties' 1979 agreement was not governed by the provisions of the Uniform Arbitration Act, *see* N.D.C.C. § 32–29.2–20 (chapter applies *only* to agreements made after June 30, 1987), the district court applied the provisions of the Uniform Arbitration Act. In 1979, however, voluntary or contractual arbitration was procedurally regulated to some extent by N.D.C.C. Chapter 32–29. The cases cited by the parties interpreted the provisions of N.D.C.C. Chapter 32–29. Con-

sequently, the process being followed thus far in·this proceeding has been somewhat confusing inasmuch as the procedures being invoked are those set forth in the Uniform Arbitration Act, which is not applicable, and the court decisions relied on by the parties were interpreting former N.D.C.C. Chapter 32–29.

[¶ 8] The problem is further complicated by the fact that the bill that enacted the Uniform Arbitration Act also repealed N.D.C.C. Chapter 32–29. *See* 1987 N.D. Sess. Laws Ch. 408, § 23. On the surface, it therefore could be argued that there were no statutory provisions in existence relating to arbitration agreements made before July 1, 1987.

[¶ 9] We do not think the Legislature intended to disrupt existing arbitration agreements in such a manner. ·On the contrary, the Legislature has recognized that statutes are not to be construed to impair any vested right or obligation existing when it took effect. N.D.C.C. § 1–02–30. Contractual rights are vested rights, which remain enforceable without regard to the repeal of statutes. *See* 1A *Sutherland Stat. Const.* § 23.34 (5th ed.1993).

[¶ 10] It is settled that:

"contracting parties are presumed to contract in reference to the existing law; indeed, they are presumed to have in mind all the existing laws relating to the contract, or to the subject matter thereof. Thus, it is commonly said that all existing applicable or relevant and valid statutes, ordinances, regulations, and settled law of the land at the time a contract is made become a part of it and must be read into it just as if an express provision to that effect were inserted therein, except where the contract discloses a contrary intention. By virtue of this rule, the laws which exist at the time and place of making a contract and at the place where it is to be performed, affecting its validity, construction, operation, effect, obligations, performance, enforcement, and discharge, enter into and form a part of it as if they were expressly referred to or incorporated in its terms."

17A Am.Jur.2d *Contracts* § 381 at pp. 402–406 (1991) (footnotes omitted). The partner-ship agreement in this case specifically provided "[t]he laws ·of ·the state of North Dakota. shall apply to the interpretation and operation of the agreement and the partnership."

▮ [¶ 11] It is also well settled that subsequent changes or repeals of statutes cannot impair the obligations of contracts. *See, e.g., Permann v. Knife River Coal Mining Co.,* 180 N.W.2d 146, 163 (N.D.1970) ("The denial of a vested right under a contract, by a state constitution subsequently adopted, impairs the obligation of the contract and is a deprivation of property without due process of law."), *overruled on other grounds, Haag v. State, Board of University and School of Lands,* 219 N.W.2d 121, 130 (N.D.1974). In 17A Am.Jur.2d *Contracts* § 382 at p. 407 (1991) (footnotes omitted), the authors observe:

"As for a subsequent change of the law, a contracting party is protected, generally speaking, by the constitutional guaranty that no state shall pass any law impairing the obligation of contracts. By reason of this constitutional inhibition, a state legislature may not withdraw all remedies and thus in effect destroy the contract; but modes of procedure in the courts of a state are so far within the legislative control that a particular remedy existing at the time of the making of a contract may be abrogated altogether without impairing the obligation of the contract if another and equally adequate remedy for the enforcement of that obligation remains or is substituted for the one taken away."

[¶ 12] We conclude that the parties' partnership agreement incorporates by reference former N.D.C.C. Chapter 32–29, and that common law rules governing arbitration as modified or supplemented by N.D.C.C. Chapter 32–29 are to be followed in resolving this dispute.

[¶ 13] The dispute that activated the arbitration provision was a narrow one. Section 28 of the agreement contained a buy-out provision wherein the McKibbens agreed to sell their interest in the partnership to the Griggs at the rate of 10 percent per year, for 10 years, payment to be made in honey at the

rate of 40,000 pounds of honey per year, for a total of 400,000 pounds. The 400,000 pounds was later reduced to 191,766 pounds pursuant to agreement between the parties invoked in accordance with section 30 of the agreement. The parties agreed that 74,635 pounds of honey had been delivered up to the date of the downward adjustment in November 1986, and an additional 11,748 pounds thereafter, leaving a balance of 105,383 pounds of honey. At that point, the Griggs informed the McKibbens that they were not going to make any additional payments. The McKibbens argued that the Griggs, having invoked their right to buy the seller's interest, were obligated to purchase the entire interest. The Griggs argued that they were not obligated to buy-out the partner's interest entirely, but only the percentage of the seller's interest that they wished to buy.

[¶ 14] One of the arbitrators found there were 105,383 pounds of honey due the McKibbens. He did not explain the basis for his conclusion. The second arbitrator referred to what he called a "supposed partnership" and paid no attention to it, but implicitly determined the McKibbens were not entitled to any more honey. His view was that "one party acted with stupidity and negligence while the other acted with greed and negligence. Therefore Grigg[ ]s should pay $6,510 to McKibbens." He explained the $6,510 would be the expense involved to register 105 bee locations in the Griggs name "thereby dissolving the supposed partnership." The third arbitrator agreed with the second.

▆ [¶ 15] The district court, when it ordered the parties to arbitrate, did not specify the issue to be arbitrated. This was correct because the contract provides that *any* dispute arising under the terms of the agreement shall be submitted to arbitration and that *the decision of the majority of arbitrators shall be binding.* The district court enforced the arbitration provision of the contract. Thereafter the resolution of any and all disputes was solely within the power of the arbitrators. Voluntary arbitration invokes simplicity and speed of resolution, the price for which is acceptance of the possibility of serious legal error. Nevertheless, the North Dakota Supreme Court has noted "[t]here is nothing inherently unfair or oppressive about arbitration clauses" in contracts, *David v. Merrill Lynch,* 440 N.W.2d 269, 274 (N.D.1989), and "has generously encouraged broad arbitrability of disputes." *Superpumper, Inc. v. Nerland Oil, Inc.,* 1998 ND 144, ¶ 9, 582 N.W.2d 647.

▆ [¶ 16] The McKibbens argue that the award should be vacated because of partiality. The statute they invoke is N.D.C.C. § 32–29.2–12(1)(b) which, as we have previously pointed out, is not applicable to this dispute. There is a similar provision in former N.D.C.C. § 32–29–08(2), but there is no "evident partiality" demonstrated in the record before us.

▆ [¶ 17] The McKibbens cite *Nelson Paving Co., Inc. v. Hjelle,* 207 N.W.2d 225, 234 (N.D.1973), in which the court was interpreting N.D.C.C. § 32–29–08(4), and concluded that an award will not be set aside under that subsection "unless it is completely irrational." That subsection provided for vacation if:

> the arbitrators exceeded their powers, or [if] they so imperfectly executed them, that a mutual, final, and definite award on the subject matter submitted was not made.

[¶ 18] In this case there was a final and definite award made, and in doing so the arbitrators did not exceed their powers, as this was not a court-ordered or limited submission. The entire contract was submitted to them for resolution of any disputes that might exist thereunder.

▆ [¶ 19] Although the North Dakota Supreme Court has said there is no precise definition of a completely irrational decision, *Byron's Const. v. Dept. of Transp.,* 463 N.W.2d 660, 662 (N.D.1990), the court in *Nelson Paving,* 207 N.W.2d at 230, said:

> " 'The mistakes that will void an award are those appearing on its face or gross mistakes of the arbitrators extraneously appearing as to their powers or duties, which result in real injustice or constructive fraud.' "

(Quoting *Travelers' Ins. Co. v. Pierce Engine Co.,* 141 Wis. 103, 123 N.W. 643, 645 (1909)).

*See also Scherbenske Excavating v. N.D. State Hwy. Dept.,* 365 N.W.2d 485, 489 (N.D. 1985).

[¶ 20] The dispute in this case was whether the Griggs owed the McKibbens money, and if so, how much. The arbitrators decided money was owing and therefore did not exceed their powers. On the contrary, they carried out their duty by deciding the questions submitted to them. We probably would not have reached the same conclusion, but this furnishes no ground for judicial interference with the decision made by the arbitrators. Where, as in this case, the contract provides that disputes arising under the terms of the contract must be submitted to arbitration and that the decision of the arbitrators is binding, the submission, by definition, includes all issues of law and fact.[1] *See Allstate Ins. Co. v. Nodak Mut. Ins. Co.,* 540

N.W.2d 614, 617 (N.D.1995); *Carlson v. Farmers Ins.,* 492 N.W.2d 579, 582 (N.D. 1992); 4 Am.Jur.2d, *Alternative Dispute Resolution* § 74 (1995).

[¶ 21] We conclude that the arbitrators' award is not completely irrational and that the McKibbens have presented no basis to vacate or modify it. We therefore affirm the decision of the district court.

[¶ 22] MICHAEL O. McGUIRE, District Judge and EUGENE A. BURDICK, Surrogate Judge, concur.

---

**1.** We observe that this case provides an excellent illustration of why practitioners should be cautious in recommending to clients that contractual relationships include arbitration provisions. If they do so recommend, they may also wish to include more details specifying the nature and extent of any arbitration to be included in a contract and the procedure to be followed in the arbitration.