2000 ND 56

**O&K GLASS CO., Plaintiff and Appellee,**

v.

**INNES CONSTRUCTION CO., INC., Defendant and Appellant.**

**No. 990252.**

Supreme Court of North Dakota.

March 21, 2000.

Ralph F. Carter, Moosbrugger, Dvorak & Carter, Grand Forks, for defendant and appellant.

Tracy A. Gompf (argued) and Jeff A. Bredahl, Bredahl & Associates, P.C., Fargo, for plaintiff and appellee.

MARING, Justice.

[¶ 1] Innes Construction Co., Inc. ("Innes") appeals from a trial court order denying its motion to vacate an arbitration award in favor of O&K Glass Co. ("O&K"), and also from the judgment entered by the trial court. We affirm.

## I.

[¶ 2] Innes was awarded a contract to construct a skyway on the University of North Dakota ("UND") campus in Grand Forks, North Dakota. Innes built the steel skyway frame and subcontracted with O&K for the installation of glass and acrylic panels. O&K subcontracted with Skytech Systems ("Skytech") to manufacture the panels. Several months after execution of the subcontract between O&K and Skytech, Innes and O&K entered into a Joint Payment Agreement, which provided all sums due from Innes to O&K "for material and/or labor furnished by [Skytech] . . . shall be paid by means of a check . . . made payable jointly to" O&K and Skytech. The stated purpose of this agreement was to induce Skytech to provide labor and materials for the project.

[¶ 3] Delays occurred both before and after the arrival of the panels. First, problems at Skytech's plant resulted in a later shipping date than anticipated. Then, when the panels arrived, they had been improperly packaged so O&K's crews were required to re-sort the panels to de-

termine their placement. In addition, the panels did not strictly conform to the steel framing Innes had previously installed; therefore O&K was forced to remanufacture the panels to fit them into the frame, which O&K asserted resulted in substantial delays. Finally, O&K claimed adverse weather conditions caused other delays: crews could not work on rainy days because some of the adhesive materials required for installation of the panels could not be used in the rain, and further, O&K's owner did not want workers to be put at risk by using power tools outdoors in the rain. O&K also claimed the panels could not be installed on especially humid days because the humidity would be trapped between the panels.

[¶ 4] Innes disputed weather caused the delays, asserting O&K fell behind schedule because it did not sufficiently staff the site. Innes claimed O&K contracted to supply two crews working 6 days a week for 10 hours per day; yet sometimes only a few workers were at the site, and they worked much more limited hours than promised. Initially, Innes sought informal extensions from UND to give O&K time to complete the work. Then, Innes informed O&K it was bringing in another company, Fargo Glass and Paint ("Fargo Glass"), to help finish the job. Innes claimed O&K walked off the job site, leaving Fargo Glass to complete the work. O&K claimed Innes stopped paying for the installation; after inquiring whether Innes planned to start paying again, O&K ceased performing, which it asserted was its right under the subcontract.

[¶ 5] O&K demanded arbitration as provided in its subcontract with Innes, and Innes also submitted an arbitration claim against O&K. The arbitrator found Innes and O&K, through the Joint Payment Agreement, agreed to be jointly and severally liable to Skytech. Based on that agreement, the arbitrator imputed knowledge of the terms of O&K's subcontract with Skytech to Innes. The arbitrator also found, due to the terms of that sub-

contract and the nature of the problems at Skytech's plant, the only recourse against Skytech was rejecting its late tendered performance, which neither Innes nor O&K did. The arbitrator concluded Innes waived the original installation schedule both by accepting the goods and by asking UND for extensions, and thus O&K was entitled to a new start date for performance of the installation work once the materials arrived. The arbitrator also found Innes unilaterally interfered with O&K's performance by hiring Fargo Glass, essentially "accelerating" the installation schedule despite the delays. The arbitrator rejected Innes' claim that it could charge O&K for the labor provided by Fargo Glass, because the decision to hire Fargo Glass was an interference with O&K's work. The arbitrator awarded $47,500 to O&K, representing the unpaid balance on the subcontract between them, and awarded $400 to Innes for cleanup costs at the site.

[¶ 6] O&K filed a motion in the trial court to confirm the arbitration award. Innes moved to vacate the award and requested that the trial court allow additional testimony. The trial court refused and entered an order confirming the arbitration award.

## II.

[¶ 7] Innes claims the arbitration award should be vacated because the arbitrator exceeded his powers. Under N.D.C.C. § 32–29.2–12(1)(c), an arbitration award may be vacated if the "arbitrators exceeded their powers"; however, we will vacate an arbitration award under this subsection only if it is "completely irrational." *Carlson v. Farmers Ins. Group of Companies—Farmers Ins. Exchange*, 492 N.W.2d 579, 581 (N.D.1992). "[A] decision is completely irrational if it is either mistaken on its face or so mistaken as to result in real injustice or constructive fraud." *Byron's Constr. Co. v. N.D. Dep't of Transp.*, 463 N.W.2d 660, 662 (N.D.1990) (citing *Nelson Paving Co., Inc.*

*v. Hjelle*, 207 N.W.2d 225 (N.D.1973)). An arbitrator's mere mistake as to fact or law is not a sufficient ground for overturning an arbitration award. *Carlson*, at 582. As to the public policy underlying this strict standard of review, we have stated:

> the effect of applying the clearly irrational standard of review is to give to the arbitrators every benefit of every doubt. It affords them the widest latitude to exercise their authority and arrive at their decision without the customary restraints of traditional judicial review. It is but a reflection of the strong public policy favoring the arbitration process.

*Scherbenske Excavating, Inc. v. N.D. State Highway Dep't*, 365 N.W.2d 485, 489 (N.D. 1985).

[¶ 8] Innes argues the arbitrator irrationally interpreted the Joint Payment Agreement and also claims the arbitrator's conclusion that it waived the construction schedule was completely irrational. Our review of this matter is hampered somewhat by the absence of a record of the arbitration hearing. The hearing lasted one and one-half days and the parties presented some 79 exhibits, yet neither party arranged for a transcript to be made and few of the exhibits are a part of the record on appeal. However, after examining the record before us, we determine the arbitrator's decision was not completely irrational and decline to overturn the arbitration award.

[¶ 9] The arbitrator concluded, through the Joint Payment Agreement, Innes and O&K agreed to be jointly and severally liable to Skytech. The agreement states its purpose was to induce Skytech to provide labor and materials under its subcontract with O&K and was "in consideration thereof." While it does not expressly state the parties intended joint and several liability, it is not completely irrational to conclude the agreement created an obligation between Innes and Skytech for which Innes could be liable.

[¶ 10] The arbitrator concluded Innes waived the original construction schedule

contained in its subcontract with O&K when it accepted delivery of the goods from Skytech and repeatedly asked UND for informal extensions. Innes knew O&K would begin installing the panels later than anticipated due to the shipping delay. Innes acknowledged it asked UND for extensions based on the delays O&K encountered. Innes' actions "are inconsistent with an intention by the injured party to insist on rights to performance under the contract." *Weisser v. Grand Forks Federal Sav. and Loan Ass'n*, 406 N.W.2d 696, 699 (N.D.1987). In *Weisser*, we noted a party who "accepts performance in a manner different from that required by the contract has been held to have acquiesced to the nonconforming performance made by the other party." *Id.* (citing *Dangerfield v. Markel*, 252 N.W.2d 184, 191 (N.D. 1977)). Thus, it is not completely irrational to conclude Innes' acceptance of the delayed goods and requests for extensions ratified O&K's performance delays and waived Innes' right to demand performance according to the terms of the subcontract.

[¶ 11] It is possible the arbitrator's decision was based on mistakes of law or fact; however, under our standard, that is not a sufficient ground to overturn the award. Strong public policy in this state favors judicial restraint in reviewing arbitration awards, such that arbitrators are given every benefit of every doubt and an award should not be overturned unless it is mistaken on its face. Reviewing the award, it appears neither of the arbitrator's conclusions are completely irrational. Therefore, we decline to overturn the arbitration award.

### III.

[¶ 12] Innes next argues the trial court abused its discretion when it refused to allow oral testimony at the hearing on its motion to vacate the award. Rule 3.2, N.D.R.Ct., which governs motions, states that a court "may allow or require testimony on [a] motion." Rule 43(e), N.D.R.Civ.P. states:

[w]hen a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct the matter be heard wholly or partly on testimony or depositions.

We have stated that whether testimony is allowed on a motion is within the sound discretion of the court. *Ennis v. Berg,* 509 N.W.2d 33, 38 (N.D.1993). A trial court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process. *Gowin v. Trangsrud,* 1997 ND 226, ¶ 8, 571 N.W.2d 824.

[¶ 13] We determine the trial court's refusal to allow oral testimony on the motion was not an abuse of discretion. While no record or transcript of the arbitration proceeding existed, the trial court accepted affidavits from the parties and heard extensive oral argument at the hearing. In some circumstances, a trial court may wish to hear oral testimony in reviewing an arbitration award. However, given the facts of this case and that the standard of review of the arbitration decision by the trial court is limited to "completely irrational," it was not an abuse of discretion for the trial court to refuse to hear oral testimony.

### IV.

[¶ 14] We conclude the arbitration award in favor of O&K was not completely irrational and so decline to overturn it. We also determine that the trial court did not abuse its discretion when it refused to hear oral testimony on the motion to vacate the award. Therefore, we affirm the order of the trial court and the judgment.

[¶ 15] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, CAROL RONNING KAPSNER, JJ., concur.