2003 ND 7

**STATE of North Dakota, the North Dakota Department of Transportation, and its Director David A. Sprynczynatyk, Plaintiffs, Appellants, and Petitioners,**

v.

**GRATECH COMPANY, LTD., Defendant, Appellee, and Respondent.**

**American Arbitration Association, Defendant,**

and

**The Honorable Bruce B. Haskell, Judge of the District Court, South Central Judicial District, Respondent.**

No. 20020211.

Supreme Court of North Dakota.

Jan. 17, 2003.

Charles S. Miller, Jr., Fleck, Mather & Strutz, Bismarck, N.D., for appellants.

Ronald G. Schmidt (argued), Schmidt, Schroyer & Moreno, P.C., Rapid City, S.D., and Jack McDonald (appeared), Wheeler Wolf, Bismarck, N.D., for appellee.

MARING, Justice.

[¶ 1] The State of North Dakota, the North Dakota Department of Transportation, and David Sprynczynatyk, Director of the Department of Transportation (collectively "the State"), appealed from a district court order dismissing the State's action seeking a declaratory judgment that Gratech Company was not entitled to arbitrate its claim against the State and that the arbitrators lacked jurisdiction to arbitrate the claim. The State also sought a stay pending appeal and a supervisory writ directing the district court to vacate its order and to permanently enjoin the arbitration proceedings. We granted a temporary stay of the arbitration proceedings while this appeal is pending. We conclude the arbitrators had jurisdiction to determine whether Gratech had timely filed an administrative claim, and we therefore vacate the temporary stay, deny the application for a supervisory writ, and affirm the order of the district court.

I

[¶ 2] In 1997, the State awarded a contract to Gratech on a highway construction project. During construction Gratech encountered difficult soil conditions, and a dispute arose whether certain work was common excavation covered under the contract or was additional, unforeseen work entitling Gratech to extra compensation. The project was completed on November 23, 1999, and accepted by the State on December 28, 1999. On June 30, 2000, Gratech's president wrote to the project engineer requesting that the parties meet to discuss Gratech's claim that it was owed additional sums for unforeseen work on the project.

[¶ 3] The State sent a final estimate for the project to Gratech by certified mail on August 15, 2000. The cover letter enclosed with the final estimate stated final payment would be withheld until Gratech submitted certain haul road releases, pit releases, and "DBE Participation Certificates." The State withheld payment of over $83,000 until these documents were provided. The final estimate did not address payment for the alleged unforeseen work.

[¶ 4] On April 9, 2001, Gratech's president wrote to the State advising that all required releases had been provided and requesting a progress payment reducing the retainage to a nominal amount. Gratech also reiterated its request that the parties meet to discuss Gratech's claim that it was owed additional sums for unforeseen work on the project. In response to Gratech's letter, the State on April 12, 2001, advised Gratech it would process an "intermediate payment" to Gratech reducing the retainage to $5,000. The State also sent Gratech a supplemental final estimate

dated April 17, 2001. The State claims that, before it sent the supplemental final estimate to Gratech, it orally advised Gratech it would release the additional funds "but that processing the paperwork to pay down the retention would not start any clocks running over again." Gratech denies this statement was ever made.

[¶ 5] On July 13, 2001, Gratech submitted an administrative claim to the State seeking payment for the additional work. Under N.D.C.C. § 24–02–26.1, before seeking arbitration on a highway construction contract the contractor must submit a written claim for compensation to the State "not later than ninety days after the department has submitted the final estimate to the contractor." The State denied Gratech's claim, determining the claim was untimely because it had not been filed within ninety days of the August 2000 final estimate.

[¶ 6] On January 25, 2002, Gratech filed an arbitration complaint with the American Arbitration Association seeking payment for the additional work. The State moved to dismiss the arbitration, arguing the arbitrators lacked jurisdiction because Gratech had failed to comply with the statutory requirements for arbitration by failing to file a timely administrative claim under N.D.C.C. § 24–02–26.1. Gratech argued that the April 2001 supplemental final estimate was the "final estimate" for purposes of N.D.C.C. § 24–02–26.1, and that its administrative claim was timely filed within ninety days. The arbitrators found that the April 2001 document was the relevant final estimate and denied the State's motion to dismiss.

[¶ 7] The State then brought this action in district court seeking a stay of the arbitration proceedings and a declaratory judgment determining that the arbitrators lacked jurisdiction over Gratech's claim. The district court granted a temporary stay. By written order dated July 31, 2002, the court determined the arbitrators had jurisdiction to determine whether Gratech had timely filed its claim. Accordingly, the district court vacated the temporary stay and dismissed the declaratory judgment action.

[¶ 8] The State appealed from the district court order dismissing its action. The State also sought a stay pending appeal and a supervisory writ directing the district court to vacate its order and to permanently enjoin the arbitration proceedings. On August 21, 2002, we ordered that the arbitration proceedings be stayed pending further order of this Court.

## II

[¶ 9] The sole question on appeal is whether the arbitrators had the authority to determine whether Gratech had timely submitted its administrative claim and was therefore entitled to demand arbitration.

[¶ 10] Under N.D.C.C. § 24–02–26, all disputes arising out of a highway construction contract must be submitted to arbitration:

> All controversies arising out of any contract for the construction or repair of highways entered into by the director must be submitted to arbitration as provided in this chapter and chapter 32–29.2. Any person who voluntarily enters into a contract for the construction or repair of highways must be considered as having agreed to arbitration of all controversies arising out of that contract.

Section 24–02–31, N.D.C.C., specifies that "[t]he arbitrators shall determine all controversies between the parties growing out of the contract."

[¶ 11] Section 24–02–26.1, N.D.C.C., provides certain conditions precedent before a contractor may demand arbitration:

In addition to the provisions of section 24–02–30, full compliance by a contractor with the provisions of this section is a condition precedent to the contractor's right to demand arbitration. . . .

Any person submitting a claim for compensation under this section, personally or on behalf of another person or entity, must do so in writing, not later than ninety days after the department has submitted the final estimate to the contractor. . . .

The director shall act on the claim within sixty days after the claim is served upon the director. The contractor and the director may negotiate a supplemental agreement for the claim items that are accepted by the director, and the director shall immediately pay the contractor for any additional compensation resulting from the supplemental agreement. The contractor may demand arbitration on the remaining claim items within ninety days after the contractor has been notified of the director's action on the claim.

Although the statute specifies a claim must be filed within ninety days of submission of the final estimate, the term "final estimate" is ·not defined in our statutory scheme.

 [¶ 12] As a matter of public policy, the arbitration process is strongly favored in this state. *See, e.g., O & K Glass Co. v. Innes Constr. Co.,* 2000 ND 56, ¶ 7, 608 N.W.2d 236; *Superpumper, Inc. v. Nerland Oil, Inc.,* 1998 ND 144, ¶ 9, 582 N.W.2d 647; *Allstate Ins. Co. v. Nodak Mut. Ins. Co.,* 540 N.W.2d 614, 619 (N.D. 1995); *Carlson v. Farmers Ins. Group,* 492

N.W.2d 579, 582 (N.D.1992); *State v. Stremick Constr. Co.,* 370 N.W.2d 730, 732 (N.D.1985). In light of this strong public policy, we have concluded that, where there is a broad arbitration clause and no exclusion clause, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Allstate,* at 619. Arbitrators, acting under the authority granted to them by a contract or statute, unless expressly limited by the terms of the contract or statute, are the judges of both the law and the facts. *Id.* at 617; *McKibben v. Grigg,* 1998 ND App 5, ¶ 20, 582 N.W.2d 669. When the parties have agreed or are bound by statute to submit contractual disputes to arbitration, the role of the court is very limited. *Stremick,* at 734; *West Fargo Pub. Sch. Dist. v. West Fargo Educ. Ass'n,* 259 N.W.2d 612, 619 (N.D.1977); *McKibben,* at ¶ 6. The question whether the dispute is arbitrable is for the arbitrators, not the district court, to determine. *See Superpumper,* at ¶ 9; *Stremick,* at 735.

[¶ 13] In this case, the arbitrators were faced with determining the effect of multiple final estimates [1] upon the contractor's duty to file an administrative claim. The question whether Gratech had timely filed its administrative claim with the State turned upon disputed facts and interpretation of the construction contract.

[¶ 14] The State claims the August 2000 document was the "final estimate," and argues that Cal Gendreau, the Construction Services Engineer for the Department of Transportation, orally advised Gratech's president that issuance of the supplemental final estimate in April 2001 "would not start any clocks running over again." Gratech's president in an affidavit

---

1. In addition to the August 2000 final estimate and the April 2001 supplemental final estimate, the record also indicates an earlier document denoted as a "final estimate" was sent to Gratech by the project engineer on May 23, 2000.

specifically denied Gendreau had made any such statement.

[¶ 15] Gratech argues the April 2001 document constitutes the final estimate, and points to language in the construction contract governing final estimates and semifinal estimates. Section 109.05 of the contract provides, in pertinent part:

After 90% of the work has been completed and:

1) all pit releases, receipts of payment, and haul road releases are on file with the Department; and

2) all payrolls have been submitted and are up to date; and

3) the remaining work can be completed without accrual of liquidated damages; and

4) the Contractor is making a diligent effort to complete the work remaining on the project;

the Engineer may prepare a semifinal estimate for the work completed and retain not less than 1% of the dollar amount of work completed. The remainder, less all previous payments, will then be certified for payment.

After all original Contract work is completed and conditions 1) through 4) above have been met, the Engineer may prepare a semifinal estimate for the work completed and retain less than one percent of the dollar amount of work completed. The actual amount of retainage must be approved by the Construction Engineer.

Section 109.08 of the contract provides:

When the Project has been accepted as provided in Section 105.13, the Engineer will prepare the final estimate for work performed. After approval of the final estimate by the Contractor, the entire sum due will be paid after deducting all previous payments and all amounts owed to the Department or to be re-tained or deducted under the Contract provisions.

All prior partial estimates and payments shall be subject to correction in the final estimate and payment.

The Contractor may be required to furnish proof of compliance with all laws which directly or indirectly apply to the work before any partial or final payment is made.

Gratech argues that these contractual provisions dictate that a final estimate could not be issued until all pit releases and haul road releases had been filed with the Department. It is undisputed that when the August 2000 final estimate was sent to Gratech the required pit releases and haul road releases had not all been filed. At best, the contract provisions regarding final estimates are ambiguous, and there clearly were fact issues and contract interpretation issues raised by the issuance of multiple final estimates in this case.

[¶ 16] As previously noted, the arbitrators are statutorily authorized to "determine all controversies between the parties growing out of the contract," N.D.C.C. § 24–02–31, and it is for the arbitrators to determine whether a claim for arbitration has been timely filed. *See Stremick,* 370 N.W.2d at 735. As we explained in *Allstate,* 540 N.W.2d at 617, "procedural questions, such as the legal effect of statutes of limitations, unless expressly excluded from arbitrability, should be left to the arbitrators once it has been established that the subject matter of the dispute is arbitrable." We agree with the rationale expressed in *Allstate,* at 619, that, in light of the strong public policy favoring arbitration, "we see no persuasive reason to place artificial restrictions on the arbitration panel's authority which are not called for" by the statute mandating arbitration.

[¶ 17] We conclude that, like a statute of limitations, timely filing of an administrative claim under N.D.C.C. § 24–02–26.1 is a procedural question which lies within the arbitrators' statutory authority. Since there is no express exclusion of arbitrability of this issue in either the statutory scheme or the construction contract, we conclude the district court did not err in determining the arbitrators had the authority to decide the issue.

[¶ 18] The State argues that the arbitrators lacked jurisdiction and the district court was required to decide whether Gratech had timely filed its claim with the State by N.D.C.C. § 32–29.2–02(2), which provides:

On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, if in substantial and bona fide dispute, must be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.

The State contends that, if Gratech failed to file a timely administrative claim in accordance with N.D.C.C. § 24–02–26.1, there is no agreement to arbitrate. Accordingly, the State asserts, the issue is one for the district court under N.D.C.C. § 32–29.2–02(2).

■ [¶ 19] This issue is a red herring. By statute, all disputes arising out of highway construction contracts must be submitted to arbitration. See N.D.C.C. § 24–02–26. By voluntarily entering into a highway construction contract, the parties are deemed to have agreed to arbitration of all disputes. Id. As we noted in Allstate, 540 N.W.2d at 618, arbitration in highway construction cases "is the explicit choice of the legislature rather than the result of an agreement between the parties." The requirement in N.D.C.C. § 24–02–26.1 that the contractor file a timely administrative claim is a procedural condition precedent, and does not eradicate the explicit statutory creation of an agreement to arbitrate between the parties. The dispute in this case did not call into question whether there was an agreement to arbitrate.

[¶ 20] We have previously addressed an arbitration panel's determination that a contractor had failed to comply with the conditions precedent contained in N.D.C.C. § 24–02–26.1. In Byron's Constr. Co. v. North Dakota State Highway Dep't, 448 N.W.2d 630 (N.D.1989), a contractor asserted the arbitrators had exceeded their powers in determining the contractor's claims were barred because the contractor had failed to comply with notice requirements in N.D.C.C. § 24–02–26.1. We noted that a contractor's failure to give timely notice under N.D.C.C. § 24–02–26.1 "constituted a waiver of its right to claim additional compensation and a failure of the condition precedent to demand arbitration of the matter." Byron's, at 634. We applied the "completely irrational" standard of review to the arbitrators' decision that the contractor had not complied with the conditions precedent under N.D.C.C. § 24–02–26.1. Byron's, at 632, 634.

[¶ 21] We conclude the arbitrators had jurisdiction to determine whether Gratech had timely submitted its administrative claim and was therefore entitled to demand arbitration.

III

[¶ 22] We have considered the remaining issues raised by the parties and find them to be without merit or unnecessary to our decision. We vacate the temporary stay, deny the application for a supervisory writ, and affirm the order of the district court.

[¶ 23] WILLIAM A. NEUMANN, and CAROL RONNING KAPSNER, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 24] I continue to believe that when the issue of timeliness of the demand for arbitration arises out of the statutes, it is an issue for the courts to decide but if it arises out of the contract, it is for the arbitrators to determine. *Allstate Ins. Co. v. Nodak Mut. Ins. Co.*, 540 N.W.2d 614, 620 (N.D.1995)(Vande Walle, C.J., dissenting); *State v. Stremick Constr. Co.*, 370 N.W.2d 730, 735 (N.D.1985)(Vande Walle, J., dissenting). It might be argued here that the issue of timeliness of the demand for arbitration arises out of the statute, N.D.C.C. § 24–02–26.1, because of the lack of definition of the term "final estimate." However, the real issue appears to me to focus on the contract, particularly §§ 109.05 and 109.08 as quoted in the majority opinion, as well as the actions of the parties. Nor am I concerned that N.D.C.C. § 32–29.2–02(2), enacted after the decision in *Stremick*, but before the decision in *Allstate*, reserves the issue to the Court. Therefore, by applying the standard I espoused in my dissents in *Stremick* and *Allstate*, I reach the same result as does the majority in this instance, and I concur in that result.

[¶ 25] DALE V. SANDSTROM, J., concurs.